**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

ROBERT JAMES DICKSON
and WENDY LEA DICKSON,

    Plaintiff,                                  CASE NO. 05-CV-10045-BC

v.                                             DISTRICT JUDGE DAVID M. LAWSON
                                                MAGISTRATE JUDGE CHARLES BINDER

NOVESTA TOWNSHIP,
RONALD E. PALMER,
KAREN MOZDEN, RALPH ZINNECKER,
RONALD PATERA, DENNIS HENDRICK,
AND DALE CHURCHILL,

    Defendants.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
**ON DEFENDANTS' INITIAL DISPOSITIVE MOTION**
(Dkt. 15)

**I.    RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Initial Dispositive Motion be **GRANTED**.

**II.    REPORT**

    **A.    Introduction and Facts**

By order of U.S. District Judge David M. Lawson, this case was referred to the undersigned Magistrate Judge for general case management on February 23, 2005. (Dkt. 2.) Pending is the above-entitled motion. Plaintiffs have filed a response opposing the motion. (Dkt. 16.) Upon

review, I conclude that pursuant to E.D. Mich. LR 7.1(e)(2), this motion is ready for Report and Recommendation without oral argument.

On February 7, 2005, Plaintiffs filed their *pro se* complaint. Prior to any Defendant answering the complaint, on June 6, 2005, Plaintiffs filed their *pro se* amended complaint. Defendants include a township within Tuscola County, Michigan, the township supervisor, clerk, treasurer, and three township trustees. Plaintiffs allege that they have owned land in the township since 1985 and that they use the land "for husbandry and the careful management of resources." (Am. Compl., Dkt. 3, ¶ 12.) Plaintiff states that he "uses implements of husbandry to harvest, cut, and truck logs and to turn firewood grade trees into a resalable product quite frequently on his own private land. Plaintiff also raises livestock and feed on his private land. . . . Plaintiff also owns, possesses and uses various tools, vehicles, implements and items for other purposes and uses involved in . . . his occupation and trade of agricultural and [sic] husbandry." (*Id*. ¶ 18.)

Plaintiffs allege that in early April 2001, Defendant Palmer made a warrantless entry upon Plaintiffs' land, inspecting the property and taking a series of pictures. Plaintiffs allege that subsequent to the warrantless search, they were prosecuted for violations of Novesta Township ordinances relating to junk and dismantled cars, and that the prosecution has "essentially prohibited [Plaintiff] from engaging in his occupation and agricultural trade[.]" (*Id*. ¶ 21.) Plaintiffs allege that this prosecution violates Michigan law, as well as his right "to the pursuit of happiness, his right to own and possess property, and his right to property." (*Id*. ¶ 22.)

Plaintiffs' amended complaint contains six counts: Declaratory Judgment as to Right to Work Under the Tenth Amendment (Count I); Declaratory Judgment as to Right to own Tools, Vehicles, Implements and Materials of Trade Under Fourth Amendment (Count II); Declaratory Judgment as to Invalidity or Inapplicability of Ordinance (Count III); Violation of Right to Pursuit

of Happiness (Count IV); Violation of Fourth Amendment Right to Privacy (Count V); Violation of Fourth Amendment Right to own Property (Count VI).  Citing 42 U.S.C. § 1983, the amended complaint seeks the award of compensatory and punitive damages.

Defendants have responded with the instant motion which seeks an order dismissing Plaintiffs' amended complaint on the grounds that it is barred by the doctrines of collateral estoppel and qualified immunity.  In their response, Plaintiffs argue that the Novesta Township Ordinance is unconstitutional.  Citing a currently pending case before United States District Judge Denise Page Hood, Plaintiffs argue that their cause of action is not barred by res judicata or collateral estoppel.  Plaintiffs further argue that Defendants are not entitled to qualified immunity as they knowingly violated Plaintiffs' clearly established constitutional rights to work, to own property, and their right "to the pursuit of happiness."

Enacted in 1969, the Novesta Township Junk and Dismantled Car Ordinance has as its purpose:

> . . . to limit and restrict the outdoor storage, parking or unreasonable accumulation of junk, unused, partially dismantled or inoperable motor vehicles, house trailers, tractor-trailers, machinery, or new or used parts thereof, within the Township of Novesta; to thereby avoid injury and hazards to children and others attracted to such junk, vehicles, or trailers, the devaluation of property values, and the psychological effect of the presence of such vehicles, junk or trailers upon adjoining residents and property owners; and to control and contain the businesses of buying, selling, and/or salvaging junk, and dismantling, wrecking, and disposing of the junk and/or refuse material of automobiles and other vehicles and machinery.

(Defs.' Mot., Dkt. 15, Ex. 2.)

The statute defines "junk" in the following terms: "'Junk' as used in this ordinance, shall be deemed to be any personal property other than clothing, household furnishings and office and/or store fixtures, which is or may be salvaged for reuse, resale, reduction or similar disposition." (*Id.*)

Section 4 of the Ordinance states:

> A. No person, firm or corporation shall park, store, or place upon any public right of way or public property or upon any private premises within the Township of Novesta any motor vehicle, house trailer or tractor-trailer or new or used parts or junk therefrom, or junk of any description as defined above, unless the same is wholly contained within a fully enclosed building and does not violate any zoning or building laws of the township, county or State of Michigan[.]

(*Id.*) A series of exceptions are made for duly licensed vehicles "with substantially all main component parts attached," vehicles temporarily inoperable and under repair for "minor mechanical failure," vehicles such as stock cars or modified cars, and vehicles used for agricultural purposes.

Exhibits attached to Defendants' motion indicate that in July 1989, an attorney representing the Township forwarded a letter to Plaintiffs advising them that the condition of their premises violated the Junk and Dismantled Car Ordinance. (Defs.' Mot., Dkt. 15 at 3.) In December of that year, a misdemeanor complaint was filed in 71-B Michigan Judicial Court charging Plaintiffs with violation of the Ordinance. (*Id.* at 4.) The *nolle prosequi* was filed in that case in February 1990, as Plaintiffs were said to have "made an agreement with Novesta Township Supervisor to clean up the premises which violates the Ordinance referred to above." (*Id.*, Ex. 5.)

In late August 2000 and mid-April 2001, Plaintiffs received notices from the Novesta Township Supervisor advising them that they were "in violation of the Novesta Township Junk and Dismantled Car Ordinance." (*Id.*, Ex. 6.) Criminal charges were ultimately filed against Plaintiffs in the 71-B Michigan Judicial Court, and on November 28, 2001, after a non-jury trial, Plaintiffs were found guilty of violating the Ordinance. (*Id.*, Ex. 8.) Each of the Plaintiffs was sentenced to 30 days in jail, fines and costs, and placed on probation for seven months. (*Id.*) Plaintiffs appealed this judgment to the Tuscola County Michigan Circuit Court. On September 12, 2002, Michigan Circuit Judge Martin E. Clements affirmed the judgment and sentence of the

4

Michigan District Court, stating in part, "A review of the pretrial decisions and the trial show that they were conducted in a fair and impartial manner by the trial judge, who exhibited patience and assistance to the defendants. The many complaints of violation of privacy, trespassing and lack of authority of the township were correctly decided. The trial transcript reveals overwhelming proofs of defendants' violation of the ordinance." (*Id.*, Ex. 9.)

On September 5, 2003, a request that the Plaintiffs be discharged from probation was approved by a Michigan district judge. The discharge order states that the Plaintiffs had "shown the court . . . that a significant effort has been made to get his property in compliance with the Novesta Township Ordinance." (*Id.*, Ex. 10.) The probation officer requesting the discharge also stated that it was Plaintiffs' "intention to continue to work to improve the property." (*Id.*)  As mentioned, the instant suit followed in early November 2005.

**B.     Law and Analysis**

**1.     Governing Legal Standards**

Although the Federal Rules of Civil Procedure are not cited in support of Defendants' motion, Defendants clearly seek dismissal of Plaintiffs' complaint. I therefore conclude that the motion should be considered under Rule 12(b) of the Federal Rules of Civil Procedure.

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal for failure to state a claim upon which relief can be granted. "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor*

5

*Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). Accordingly, when deciding a dismissal motion, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Cline v. Rogers*, 87 F.3d 176 (6th Cir. 1996) (citing *In re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir. 1993)).

Plaintiffs have brought this action *pro se.* A *pro se* litigant's pleadings are construed liberally and judged against a less stringent standard than pleadings drawn by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972). ". . . [A] *pro se* litigant, whether a plaintiff or defendant, is required to follow the law." *Williams v. Sears, Roebuck and Co.*, 143 F. Supp. 2d 941, 947 (W.D. Tenn. 2001). As the U.S. Supreme Court stated in *McNeil v. United States*, 508 U.S. 106, 113, 113 S. Ct. 1980, 124 L. Ed. 2d 21 (1993), "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." *Id.* at 113.

**2. Discussion**

Citing an unpublished case from the United States Court of Appeals for the Sixth Circuit (Dkt. 15, Ex. 11), Defendants argue that Plaintiffs' amended complaint is barred by the doctrine of collateral estoppel. That case, *Elliott v. Co. of Ionia*, No. 98-2104, 1999 WL 1021586 (6th Cir. Mich. November 1, 1999), is, I suggest, analogous and controlling. As in this case, the *pro se* plaintiff in *Elliott*, filed suit under 42 U.S.C. § 1983, alleging violation of his federally protected constitutional rights after he was prosecuted, arrested, searched, and incarcerated for violating a county "blight" ordinance. The district court granted summary judgment to the defendants finding that another court had dismissed an earlier suit concerning the same incidents. On appeal, the Sixth Circuit affirmed, stating:

> . . . Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving any party to the prior litigation. *See Montana v. United States*, 440 U.S. 147, 153-54 (1979); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5 (1979); *Aircraft Braking Sys. Corp. v. Local 856, Int'l Union, United Auto., Aerospace and Agric. Implement Workers*, 97 F.3d 155, 161-62 (6th Cir. 1996).
>
> Upon review, we conclude that the district court properly relied on collateral estoppel to grant the defendant summary judgment. The record in Elliott's prior action shows that the issues raised in the present case were raised and actually litigated in the prior proceedings, the determination of these issues was necessary to the outcome, the case resulted in a final judgment on the merits, and Elliott had a full and fair opportunity to litigate the issues. *See Smith v. SEC*, 129 F.3d 356, 362 (6th Cir. 1997); *Bills v. Aseltine*, 52 F.3d 596, 604 (6th Cir. 1995). The county of Ionia was entitled to use collateral estoppel "offensively" against Elliott even though it was not a party to the first suit. *See Allen v. McCurry*, 449 U.S. 90, 95 (1980). The first complaint described the same series of events depicted in this lawsuit, and the prior suit was decided against Elliott. He cannot relitigate those issues.

*Id*. at \*\*1-2.

In this case, as in *Elliott*, I suggest that the doctrine of collateral estoppel bars Plaintiffs' amended complaint. The decision on appeal by the Tuscola County Circuit Court makes clear that as in *Elliott*, Plaintiffs in this case raised and actually litigated before the 71-B District Court the same issues raised in their amended complaint filed in this Court. The state court records make clear that there was a final judgment on the merits as to these issues and that Plaintiffs had a "full and fair opportunity" to litigate those issues before the state courts. It is equally clear, as in *Elliott*, that the amended complaint in this case arose out of the same series of events which gave rise to Plaintiffs' state court prosecution. Therefore, as in *Elliott*, I suggest that Plaintiffs "cannot relitigate those issues" in this Court.

In support of their position that collateral estoppel does not bar this case, Plaintiffs cite *Wickstandt, et al. v. Goodland Twp., et al.*, Case No. 04-CV-70239-DT, presently pending before United States District Judge Denise Page Hood, which Plaintiffs contend is "strikingly similar" to

7

the instant case. (*See* Dkt. 16 at 3-4.) In particular, Plaintiffs point to a memorandum opinion and order issued by Judge Hood denying a motion for dismissal.

After review of that order, as well as the other documents filed in that case, I suggest that this characterization is inaccurate and that *Wickstandt* is distinguishable and not controlling. First, in contrast to the instant case, a Michigan district court and a Michigan circuit court are explicitly named as defendants. No court, nor any court officer, has been named by Plaintiffs in this case. The memorandum opinion and order referred to by Plaintiffs deals only with the motion by those defendants. (Case No. 04-70239, Dkt. 64.) However, as mentioned, no such defendants have been sued in this case. I therefore suggest that Judge Hood's order has no precedential value in this case. More importantly, Plaintiffs arguments overlook the fact that on September 29, 2005, Judge Hood granted summary judgment as to all defendants and dismissed the case with prejudice. (*Id.*, Dkt. 73.) An appeal by plaintiffs in *Wickstandt* was dismissed by the United States Court of Appeals for the Sixth Circuit on December 19, 2005. (*Id.*, Dkt. 83.)

Although not argued by either party, I further suggest that Plaintiffs' amended complaint is barred by the applicable statute of limitations. The appropriate statute of limitations for cases filed under 42 U.S.C. § 1983 in Michigan has been well summarized by the United States Court of Appeals for the Sixth Circuit in *Wolfe v. Perry*, 412 F.3d 707 (6th Cir. 2005):

> Because Congress did not specifically adopt a statute of limitations governing § 1983 actions, "federal courts must borrow the statute of limitations governing personal injury actions in the state in which the section 1983 action was brought." *Id.* (citing *Wilson v. Garcia*, 471 U.S. 261, 275-76, 105 S. Ct. 1938, 85 L. Ed. 2d 254 (1985). We have held that the appropriate statute of limitations to be borrowed for § 1983 actions arising in Michigan is the state's three-year limitations period for personal injury claims. Mich. Comp. Laws Ann. § 600. 5805(10); *Chippewa Trading Co. v. Cox*, 365 F.3d 538, 543 (6th cir.), *cert. denied*, ___ U.S. ___, 125 S. Ct. 500, 160 L. Ed. 2d 372 (2004); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir.), *cert. denied*, 479 U.S. 923, 107 S. Ct. 330, 93 L. Ed. 2d 302 (1986). "Although state law provides the statute of limitations to be applied in a § 1983 damages action,

8

federal law governs the question of when that limitations period begins to run." *Sevier v. Turner*, 742 F. 2d 262, 272 (6th Cir. 1984); *see also Sharpe v. Cureton*, 319 F. 3d 259, 266 (6th Cir.), *cert. denied*, 540 U.S. 876, 124 S. Ct. 228, 157 L. Ed. 2d 138 (2003).

"Typically the statute of limitations for filing an action alleging an unconstitutional search and seizure begins to run at the time of the injury," when the plaintiff becomes aware of the unconstitutional action. *Shamaeizadeh v. Cunigan*, 182 F.3d 391, 394 (6th Cir.), *cert. denied*, 528 U.S. 1021, 120 S. Ct. 531, 145 L. Ed. 2d 412 (1999).

*Wolfe*, 412 F.3d at 713-14.

Guided by this precedent, I suggest that the applicable statute of limitations is the 3-year limitations period for personal injury claims set forth in MICH. COMP. LAWS § 600.5805(10). I further suggest that both Plaintiffs' amended complaint and the exhibits attached to Defendants' motion make clear that Plaintiffs were aware of the search of their property at least by November 28, 2001, when they were most recently found guilty of the Ordinance violation by the Michigan district judge. (Defs.' Mot., Dkt. 15, Ex. 8.) It is entirely possible that Plaintiffs were aware of the search of their property considerably earlier than that. (*Id.*, Ex. 6.) In fact, Plaintiffs allege that they "became aware of this invasion . . . in August or September of 2001[.]" (Am. Compl. ¶ 15.) Since the instant complaint was filed more than three years after this "invasion," of which they were clearly aware, I suggest that it is barred by the applicable statute of limitations and that the grant of Defendants' motion is appropriate. Plaintiffs' assertion that they could not file suit as they were "unable to obtain recognizable evidence that the invasion did in fact include a violation of the protected curtilage surrounding his home" (*id.*) is, I suggest entirely unavailing.

9


### III.  REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

                                                  s/ *Charles E Binder*
                                                  CHARLES E. BINDER
Dated: February 10, 2006                  United States Magistrate Judge

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date and served in the traditional manner on Robert James Dickson, Wendy Lea Dickson, Lawrence W. Dloski, and Honorable David M. Lawson.

Dated:  February 10, 2006                        By     s/Mary E. Dobbick
                                                                   Secretary to Magistrate Judge Binder