UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT JAMES DICKSON and
WENDY LEA DICKSON,

                         Plaintiffs,                         Case No. 05-10045
                                                    Hon.  David M. Lawson

v.

TOWNSHIP OF NOVESTA, RONALD E.
PALMER, KAREN MOZDEN, RALPH
PATERA, RONALD PATERA, DENNIS
HENDRICK, AND DALE CHURCHILL,

                         Defendants.
_____/

## OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE, GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AND DISMISSING CASE

       The plaintiffs filed this action *pro se* challenging the Novesta Township Junk and Dismantled

Car Ordinance, which they were convicted of violating on October 23, 2001.  This case was referred

to Magistrate Judge Charles E. Binder for general case management pursuant to 28 U.S.C. § 636(b).

Thereafter, the defendants filed a "dispositive motion," arguing that the plaintiffs' claims are barred

by the doctrine of collateral estoppel or *res judicata* and the individual defendants, as members of

the Novesta Township Board of Trustees, are entitled to qualified immunity.  On February 10, 2006,

the magistrate judge filed a report recommending that the defendants' motion, which he construed

as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), be granted and the case

be dismissed.  The plaintiffs filed timely objections to the recommendation, and the Court has

conducted a *de novo* review.  The Court finds that the motion more properly should be treated as a

motion for summary judgment, which the Court has done since the parties have presented factual

material in support of their respective positions.  So construed, the Court concludes that the

defendants are entitled to judgment as a matter of law.  Therefore, the Court will adopt the

recommendation, grant the motion, and dismiss the case.

I.

In 1969, Novesta Township enacted the Township Junk and Dismantled Car Ordinance.  The

ordinance prohibits property owners from storing inoperable and dismantled vehicles on their

property except in enclosed buildings like garages.  The ordinance reads:

> No person, firm or corporation shall park, store, or place upon any public right of
> way or public property or upon any private premises within the Township of Novesta
> any motor vehicle, house trailer or tractor-trailer or new or used parts or junk
> therefrom, or junk of any description as defined above, unless the same is wholly
> contained within a fully enclosed building and does not violate any zoning or
> building laws of the township, county or State of Michigan, except for the following:
> 1.  Duly licensed and operable vehicles or trailers with substantially all main
> component parts attached.
> 2.  Vehicles or trailers that are temporarily inoperable because of minor mechanical
> failure but which are not, in any manner dismantled and have substantially all main
> component parts attached; which may remain upon such private property for a period
> not to exceed fourteen (14) days.
> . . .
> 4.  Any operable vehicles, trailers or other machinery with substantially all main
> component parts attached, intended and actually utilized for agricultural purposes.

Novesta Township Junk and Dismantled Car Ordinance § 4(A) (1969).

In 1989, the plaintiffs received their first notice that they were violating the ordinance.  The

Township issued a misdemeanor complaint, which was dismissed on February 19, 1990 after the

plaintiffs "made an agreement with Novesta Township Supervisor to clean up the premises."  Defs.'

Mot. Dism. Ex. 5, Order of Nolle Prosequi.

In August 2000, the plaintiffs were sent a notice indicating they were again in violation of

the ordinance.  The plaintiffs claim that defendant Palmer came onto his property in violation of the

Fourth Amendment to take pictures in April 2001.  On May 7, 2001, the Township issued another

-2-

complaint against the plaintiffs.  A bench trial was held in a state district court on October 23, 2001, and the plaintiffs were found guilty of violating the ordinance.  The plaintiffs were sentenced to thirty days in jail, fined $304 each, and put on probation for seven months.

The plaintiffs appealed the conviction.  On appeal, the plaintiffs argued "that the ordinance is unconstitutional because it deprives [them] of [their] ability to make a living."  Defs.' Mot. Dism. Ex. 9, *Township of Novesta v. Dickson*, No. 01-20554-AV, slip op. at 1 (Tuscola Co. Circuit Ct. Sept. 12, 2002).  The circuit court affirmed the conviction, stating: "A review of the pretrial decisions and the trial show that they were conducted in a fair and impartial manner by the trial judge, who exhibited patience and assistance to the defendants.  The many complaints of violation of privacy, trespassing and lack of authority of the township were correctly decided."  *Id.* at 1-2.

The plaintiffs filed suit in this Court on February 7, 2005 claiming that the ordinance violates a number of constitutional provisions and their "right to pursue happiness."  They filed an amended complaint before any defendant answered.  Count one seeks a declaratory judgment that the plaintiffs have a right to pursue happiness, which they believe includes the right to work, pursuant to the Tenth Amendment.  Count two seeks a declaratory judgment that they have a right to own vehicles, tools, and other property under the Fourth Amendment.  Count three seeks a declaratory judgment that the ordinance is unconstitutional as applied to the plaintiffs and violates the Fourth, Tenth, and Fourteenth Amendments.  Counts four through six allege that the defendants violated 42 U.S.C. § 1983 by interfering with the plaintiffs' right to pursue happiness, violating their right to privacy, and violating their right to own property.

The defendants then filed a motion styled as "defendants' initial dispositive motion," arguing that the plaintiffs' claims are barred by the doctrine of collateral estoppel or *res judicata* and that

the individual defendants, as members of the Novesta Township Board of Trustees, are entitled to qualified immunity.  Acting on the order of reference, the magistrate judge filed a report on February 10, 2006 recommending that the defendants' motion, which he considered a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), be granted and the case dismissed.  The magistrate judge concluded that the plaintiffs' claims are barred by collateral estoppel because they litigated the issues raised in their complaint concerning the constitutionality of the ordinance during their state court trial for violation of the ordinance.  He also suggested the complaint is barred by the statute of limitations.  The magistrate judge did not address the qualified immunity argument.  As noted above, the plaintiffs filed timely objections to the recommendation, and the matter is now before the Court for *de novo* review.

II.

The plaintiffs have three objections to the report.  First, the plaintiffs argue that the magistrate judge improperly considered matters outside the pleadings and failed to accept all allegations in the complaint as true while purporting to analyze the case under Rule 12(b)(6).  Second, the plaintiffs claim collateral estoppel (which they sometimes refer to as *res judicata*, but the defendants' motion is based on collateral estoppel) is not available under Rule 12(b)(6) and should not apply because they seek declaratory relief, the prior court refused to consider the arguments, and application of estoppel would result in injustice.  Finally, the plaintiffs object to the magistrate judge's discussion of the statute of limitation because it is an affirmative defense that must be raised by the defendants.  Even if properly raised, the plaintiffs argue, the statute of limitations does not apply to claims for prospective relief and should be tolled due to fraud by the defendants.

A.

-4-

The defendants' motion requesting dismissal of the complaint, titled "Defendants' Initial Dispositive Motion," failed to cite either Federal Rule of Civil Procedure 12(b)(6) or Rule 56. Although the defendants attached numerous exhibits to their motion, the magistrate judge considered the defendants' motion to be a motion to dismiss pursuant to Rule 12(b)(6). The plaintiffs object, arguing that the magistrate judge improperly considered matters outside the pleadings and failed to accept all allegations in the complaint as true as required by Rule 12(b)(6). The plaintiffs also claim that collateral estoppel is not available under Rule 12 and must be raised under Rule 8. The plaintiffs cite a Fifth Circuit case, *Moch v. East Baton Rouge Parish School Bd.*, 548 F.2d 594 (5th Cir. 1977), in support of their contention. However, the court in that case noted:

> Generally, a party cannot base a 12(b)(6) motion on res judicata. That doctrine must be pleaded as an affirmative defense. 5 Wright and Miller, Federal Practice and Procedure: Civil P 1357, at 604-610 (1st ed. 1969). Yet, if the trial court has treated the 12(b)(6) motion as one for summary judgment, its dismissal under 12(b)(6) is not reversible error. *Larter and Sons, Inc. v. Dinkler Hotel Co.*, 199 F.2d 854, 855 (5th Cir. 1952). Here, the district court held a hearing and treated defendants' motion more like a motion for summary judgment than like a 12(b)(6) motion.

*Id.* at 596 n.3.

In this Circuit, a motion to dismiss is brought under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. When considering a motion under Rule 12(b)(6), the district court must construe a plaintiff's well-pleaded allegations in the light most favorable to the plaintiff and accept the allegations as true. *Ruffin-Steinback v. dePasse*, 267 F.3d 457, 461 (6th Cir. 2001). However, the district court need not accept legal conclusions unsupported by the facts pleaded. *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996).

Although it is generally improper to consider matters outside of the pleadings on a motion to dismiss, that rule does not apply to documents referenced by the pleadings themselves that are

central to the plaintiff's claim. *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999). In such cases, "'the defendant may submit an authentic copy to the court to be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment.'" *Ibid*. (quoting *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997)).

The prior state court records discussed by the magistrate judge may be central to the plaintiffs' claims. However, nowhere in the plaintiffs' complaint are these documents referenced. The defendants did not specify the rule under which it brought its "dispositive motion"; although it certainly would have been helpful and the better practice to do so, the addition of materials outside the pleadings in this case should have put all concerned on notice that Rule 56 set out the proper manner of proceeding. Consideration of the documents submitted by the defendants requires the motion to be considered one for summary judgment. It is appropriate for the Court to do so now on *de novo* review. Although it is not improper to consider the defense of collateral estoppel within the procedural framework of Rule 12, *see Evans v. Pearson Enter., Inc.*, 434 F.3d 839, 843 (6th Cir. 2006), the circumstances of this case fit more precisely within Rule 56.

Even if the defendants were to state that their motion is brought under Rule 12(b)(6), the Court could convert the motion to one for summary judgment. *See* Fed. R. Civ. P. 12(b) (stating that "[i]f, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56"); *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560,

571 (6th Cir. 2001) (stating that Rule 12(b) "empowers a district court to grant summary judgment *sua sponte* where the court is presented with materials outside the pleadings. Whether a district court must provide notice that it intends to convert a motion to dismiss into a motion for summary judgment depends on the facts and circumstances of each case").  Since the defendants did not specifically denominate their motion as arising under Rule 12(b), and because they and the plaintiffs presented materials outside the pleadings, Rule 56 is the governing procedural rule, and the circumstances of this case suggest that the Court should proceed accordingly.  The plaintiffs had the opportunity to respond and submit any evidence they wished.

The plaintiffs' arguments regarding Rule 8(c) are without merit.  Rule 8(c) only requires that a defendant include in its answer affirmative defenses such as "estoppel . . . res judicata, . . . and any other matters constituting an avoidance or affirmative defense."  Fed. R. Civ. P. 8(c); *Mickowski v. Visi-Trak Worldwide, LLC*, 415 F.3d 501, 506 (6th Cir. 2005).  Failure to do so may result in waiver of that defense.  However, Rule 8(c) does not prescribe the way for the Court to dismiss a case based on such defenses.  Those procedures remain in Rules 12 and 56.  For example, a statute of limitations defense must be pleaded in an answer as an affirmative defense under Rule 8(c).  Yet dismissal based on the statute of limitations is proper under Rule 12(b)(6) or Rule 56, depending on the manner in which the facts must be presented to the court.  *See Berry v. Chrysler Corp.*, 150 F.2d 1002, 1003 (6th Cir. 1945) (stating that "[t]he defense of the statute of limitations is covered by [Rule 12(b)] (6), and therefore is properly raised by motion").  The same logic applies to the defense of collateral estoppel.

B.

The magistrate judge concluded that collateral estoppel bars the plaintiffs' claims because the plaintiffs raised and actually litigated the constitutionality of the ordinance in the Tuscola County, Michigan circuit court. Although the plaintiffs' primary objection is that dismissal under 12(b)(6) was procedurally improper, the plaintiffs also argue in their objections that the issues were not fully and fairly litigated in state court. The plaintiffs claim that "although the Plaintiffs here did attempt to present some of the same claims, the litigation of the issues was severely cut short by the state court judge, who insisted that those questions were not before the court, and the only question to be litigated was whether or not there was a violation of the ordinance." Pls.' Obj. to R&R at 8 n.2. The plaintiffs appear to be referring to the trial court judge. In their response to the defendants' motion, the plaintiffs repeatedly quote the trial court judge and cite pages of the trial transcript. However, they have not submitted the transcript as evidence. The plaintiffs also argue that collateral estoppel should not be applied because it would create a manifest injustice. Neither the magistrate judge nor the plaintiffs discuss whether count five of the complaint, which alleges an illegal search by the defendants, is precluded.

"The Full Faith and Credit Act, 28 U.S.C. § 1738, requires the federal courts to give state court judgments the same preclusive effect that the state would afford such judgments." *McCormick v. Braverman*, 451 F.3d 382, 397 (6th Cir. 2006). For collateral estoppel to apply in Michigan,

> "(1) 'a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment'; (2) 'the same parties must have had a full [and fair] opportunity to litigate the issue;' and (3) 'there must be mutuality of estoppel.'" *Monat v. State Farm Ins. Co.*, 469 Mich. 679, 681, 677 N.W.2d 843 (2004) (quoting *Storey v. Meijer, Inc.*, 431 Mich. 368, 373 n. 3, 429 N.W.2d 169 (1988)) (alteration in original and footnote omitted).
>
> As to the mutuality requirement, the *Monat* court held that mutuality was not required when collateral estoppel was being used defensively. 469 Mich. at 691, 677 N.W.2d 843 ("[W]e believe that the lack of mutuality of estoppel should not preclude the use of collateral estoppel when it is asserted defensively to prevent a party from

-8-

> relitigating an issue that such party has already had a full and fair opportunity to litigate in a prior suit.").

*Gilbert v. Ferry*, 413 F.3d 578, 580-81 (6th Cir. 2005).  The defendants bear the burden of proving that collateral estoppel applies.  *Cent. Transp., Inc. v. Four Phase Sys., Inc.*, 936 F.2d 256, 260 (6th Cir. 1991).  "No rule of law precludes a prior criminal conviction from having preclusive effect in a subsequent civil proceeding between the government and the defendant" if it was actually litigated. *United States v. Beaty*, 245 F.3d 617, 624 (6th Cir. 2001).

Of the enumerated elements of the defense of collateral estoppel, the plaintiffs object only to the conclusion that they had a full and fair opportunity to litigate the issue of the ordinance's constitutionality.

> In determining whether a party has had a full and fair opportunity to litigate, the *Monat* court instructed that a court should look to the factors set forth in §§ 28-29 of the Restatement (Second) of Judgments. 469 Mich. at 847 n. 2, 678 N.W.2d 425. These sections provide factors that, if found, support the finding that the re-litigation of an issue in a subsequent action between parties is not precluded even though the issue has been actually litigated and determined by a final and valid judgment.

*Gilbert*, 413 F.3d at 581-82.  Section 28 of the Restatement provides:

> Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:
> (1) The party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action; or
> (2) The issue is one of law and (a) the two actions involve claims that are substantially unrelated, or (b) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws; or
> (3) A new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them; or
> (4) The party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent

-9-

action; the burden has shifted to his adversary; or the adversary has a significantly
heavier burden than he had in the first action; or

(5) There is a clear and convincing need for a new determination of the issue (a)
because of the potential adverse impact of the determination on the public interest
or the interests of persons not themselves parties in the initial action, (b) because it
was not sufficiently foreseeable at the time of the initial action that the issue would
arise in the context of a subsequent action, or (c) because the party sought to be
precluded, as a result of the conduct of his adversary or other special circumstances,
did not have an adequate opportunity or incentive to obtain a full and fair
adjudication in the initial action.

Restatement (Second) of Judgments § 28.

None of the factors that counsel for a relaxation of the rule preventing a party from
relitigating a legal issue decided in another proceeding applies here.  The plaintiffs obtained review
of the question of the ordinance's constitutionality in the state circuit court.  The issues are related
and there has been no intervening change in legal context.  There is no appreciable difference in the
quality of the procedures between the two courts.  The plaintiffs' legal burden is the same for both
lawsuits.  There is no clear or convincing need to relitigate the question.

The defendants have submitted some evidence that this issue was litigated fairly in the prior
state court proceedings by the Tuscola County Circuit Court.  In affirming the district court
conviction, Judge Clements wrote,

On appeal, the defendant has filed a series of complaints claiming that . . . the
ordinance is unconstitutional because it deprives him of his ability to make a
living. . . . A review of the pretrial decisions and the trial show that they were
conducted in a fair and impartial manner by the trial judge, who exhibited patience
and assistance to the defendants.  The many complaints of violation of privacy,
trespassing and lack of authority of the township were correctly decided.

Defs.' Mot. Ex. 9, *Township of Novesta v. Dickson*, No. 01-20554-AV, slip op. at 1-2 (Tuscola Co.
Circuit Ct. Sept. 12, 2002).  Certainly the defendants could have submitted better evidence that the
issue was fully and fairly litigated, perhaps by submitting copies of the parties' briefs or transcripts

-10-

of hearings.  However, they have at least submitted some evidence to support their argument, even though the opinion does not explain why the court rejected the plaintiffs' arguments.  Moreover, the plaintiffs have submitted no evidence to the contrary.

The individual defendants were not parties to the state criminal case.  However, the Michigan courts permit the assertion of defensive collateral estoppel as set forth in section 29 Restatement (Second) of Judgments, which states:

> A party precluded from relitigating an issue with an opposing party . . . is also precluded from doing so with another person unless the fact that he lacked a full and fair opportunity to litigate the issue in the first action or other circumstances justify affording him an opportunity to relitigate the issue. The circumstances to which considerations should be given include those enumerated in § 28 and also whether:
> (1) Treating the issue as conclusively determined would be incompatible with an applicable scheme of administering the remedies in the actions involved;
> (2) The forum in the second action affords the party against whom preclusion is asserted procedural opportunities in the presentation and determination of the issue that were not available in the first action and could likely result in the issue being differently determined;
> (3) The person seeking to invoke favorable preclusion, or to avoid unfavorable preclusion, could have effected joinder in the first action between himself and his present adversary;
> (4) The determination relied on as preclusive was itself inconsistent with another determination of the same issue;
> (5) The prior determination may have been affected by relationships among the parties to the first action that are not present in the subsequent action, or apparently was based on a compromise verdict or finding;
> (6) Treating the issue as conclusively determined may complicate determination of issues in the subsequent action or prejudice the interest of another party thereto;
> (7) The issue is one of law and treating it as conclusively determined would inappropriately foreclose opportunity for obtaining reconsideration of the legal rule upon which it was based;
> (8) Other compelling circumstances make it appropriate that the party be permitted to relitigate the issue.

Restatement (Second) of Judgments § 29.

The plaintiffs argue that application of collateral estoppel will result in a manifest injustice. The plaintiffs insist that the whole purpose of federal jurisdiction is to prevent the states from

violating the federal constitution. They believe the state court should not be permitted to determine the ordinance's constitutionality, and they cite *Wyckstandt v. Township of Goodland*, 04-70239, an unpublished case decided by Judge Hood, as supporting their position. In *Wyckstandt*, the plaintiffs violated various zoning and building ordinances and were prosecuted in state court. The plaintiffs sought an injunction against the state courts to prevent them from enforcing the ordinances. Judge Hood dismissed the case based on the *Rooker-Feldman* and *Younger* doctrines. *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *Younger v. Harris*, 401 U.S. 37 (1971). It is not clear to the Court why the plaintiffs here believe this case is helpful.

The plaintiffs also cite *Davis v. Wechsler*, 263 U.S. 22 (1923). In that case, the plaintiff was injured on a train "under federal control." Something called a "General Order" required all such suits to be brought in the county where the accident occurred or the county where the plaintiff lived at the time of the accident. The plaintiff brought suit in Jackson County, Missouri, which is not where he lived or where the accident occurred. The defendant filed an answer in which he denied liability and also argued that the court lacked jurisdiction due to the General Order. The lower court held that the General Order went to venue, not jurisdiction, and that the defendant waived venue according to local practice by filing an answer. The Supreme Court reversed, stating that the local practice must yield to the General Order:

> Whatever springes the State may set for those who are endeavoring to assert rights that the State confers, the assertion of Federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice. Even if the order went only to the venue and not to the jurisdiction of the Court, each [defendant] in turn plainly indicated that he meant to . . . insist that the suit was brought in the wrong county. His lawful insistence cannot be evaded by attempting a distinction between his appearance and his substantially contemporaneous adoption of the plea. Indeed when the law requires him to unite his defence on the merits, which imports an

-12-

> appearance pro hac vice, with his preliminary plea, it is hard to understand how any
> effect could be attributed to the statement that he appeared.  The state courts may
> deal with that as they think proper in local matters but they cannot treat it as
> defeating a plain assertion of Federal right.

*Davis v. Wechsler*, 263 U.S. 22, 24 (1923).  This case has no application to the present matter since

there is no local rule conflicting with federal law.  "In the end, the fundamental inquiry is whether

relitigation should be permitted in a particular case in light of what are often competing policy

considerations, including fairness to the parties, conservation of the resources of the court and the

litigants, and the societal interests in consistent and accurate results."  *Spectrum Health Continuing*

*Care Group v. Anna Marie Bowling Irrecoverable Trust*, 410 F.3d 304, 312 (6th Cir. 2005) (quoting

*Staatsburg Water Co. v. Staatsburg Fire Dist.*, 72 N.Y.2d 147, 527 N.E.2d 754, 756 (1988)).  After

balancing all these considerations, the Court agrees with the magistrate judge that collateral estoppel

should be applied, and the plaintiffs' claims that the ordinance is unconstitutional will be dismissed.

In addition, the plaintiffs' claim that the defendants violated the Fourth Amendment by

entering their curtilage to take pictures of their property (count five) is barred by either collateral

estoppel or res judicata (claim preclusion).  There is no evidence that this issue was raised at the

trial.  Nonetheless,  the plaintiffs are barred from litigating the question in a second action under

the doctrine of claim preclusion, formerly known as *res judicata*.

> Claim preclusion is the doctrine by which a final judgment on the merits in an action
> precludes a party from bringing a subsequent lawsuit on the same claim or raising
> a new defense to defeat a prior judgment.  *See Montana v. United States*, 440 U.S.
> 147, 153 (1979).  It precludes not only relitigating a claim previously adjudicated;
> it also precludes litigating a claim or defense that should have been raised, but was
> not, in the prior suit.  *See Stern v. Mascio*, 262 F.3d 600, 608 (6th Cir. 2001) (citing
> *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658, 660-61 (6th
> Cir. 1990)).  Claim preclusion only arises, however, in the presence of the following
> four elements: (1) where the prior decision was a final decision on the merits; (2)
> where the present action is between the same parties or their privies as those to the
> prior action; (3) where the claim in a present action should have been litigated in the

-13-

prior action; and (4) where an identity exists between the prior and present actions.
*See Kane*, 71 F.3d at 560.

*Mitchell v. Chapman*, 343 F.3d 811, 819 (6th Cir. 2003). "To constitute a bar, there must be an identity of the causes of action–that is, an identity of the facts creating the right of action and of the evidence necessary to sustain each action." *Westwood Chem. Co., Inc. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981). If the defendants violated the Fourth Amendment by entering the plaintiffs' property to take pictures of the junk on their property, that issue should have been litigated during their trial. All the *res judicata* factors are present, and the issue cannot be litigated here.

C

The magistrate judge alternatively suggested the plaintiffs' claims are barred by the statute of limitations. The plaintiffs object to this determination, arguing that the statute of limitations is an affirmative defense that must be raised by the defendants, and that it was improper for the magistrate judge to raise it because the defendants failed to mention it in their motion. Even if properly raised, the plaintiffs argue, the statute of limitations does not apply to claims for prospective relief and should be tolled due to fraud by the defendants.

Because this is a section 1983 case, the statute of limitations is three years. *Wolfe v. Perry*, 412 F.3d 707, 713 (6th Cir. 2005).

The plaintiffs are correct that the statute of limitations is an affirmative defense that must be raised in the defendants' first responsive pleading to avoid a waiver. *See Haskell v. Washington Twp.*, 864 F.2d 1266, 1273 (6th Cir. 1988). However, the defendants preserved that defense by asserting it in their answer to the complaint as affirmative defense number nine. *See* Answer at ¶ 51 (stating "[p]laintiffs' claims are barred, in whole or in part, by the applicable statute of limitations"). The plaintiffs were on notice of this defense, they had the opportunity to respond, and

-14-

have not been prejudiced in any way by the magistrate judge's suggestion of it as an alternative

ground for dismissing the case.  *See Stupak-Thrall v. Glickman*, 346 F.3d 579, 585 (6th Cir. 2003).

The plaintiffs also claim that, even if properly raised, the statute of limitations should not

apply because they are seeking prospective relief.  However,

> [a] request for declaratory relief is barred to the same extent that the claim for
> substantive relief on which it is based would be barred.  "Because a declaratory
> judgment action is a procedural device used to vindicate substantive rights, it is time-
> barred only if relief on a direct claim would also be barred."  *Stone v. Williams*, 970
> F.2d 1043, 1048 (2d Cir. 1992), *cert. denied*, 508 U.S. 906 (1993); *see also
> Luckenbach S.S. Co. v. United States*, 312 F.2d 545, 548 (2d Cir. 1963).  A contrary
> rule would allow a plaintiff to "mak[e] a mockery of the statute of limitations by the
> simple expedient of creative labelling."  *Gilbert v. City of Cambridge*, 932 F.2d 51,
> 57 (1st Cir. 1991).

*Int'l Ass'n of Machinists and Aerospace Workers v. Tennessee Valley Auth.*, 108 F.3d 658, 668 (6th

Cir. 1997).  The form of the plaintiffs' action does not alter the magistrate judge's findings.

The plaintiffs finally claim that the statute of limitations should not be applied because

defendant Palmer provided false testimony regarding his location on the plaintiffs' property when

he took photographs showing the plaintiffs' violation of the ordinance.  The plaintiffs state the

statute of limitations did not begin to run until February 13, 2003, the date on which they had actual

notice of the constitutional violation when they took pictures from their curtilage and the pictures

were identical to the pictures taken by defendant Palmer.

"[I]n actions brought under § 1983, '[t]he statute of limitations commences to run when the

plaintiff knows or has reason to know of the injury which is the basis of his action.'"  *Kelly v. Burks*,

415 F.3d 558, 561 (6th Cir. 2005).  "In determining when the cause of action accrues in § 1983

cases, we look to the event that should have alerted the typical lay person to protect his or her

rights." *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 856 (6th Cir. 2003).  Certainly a criminal prosecution involving pictures of the plaintiffs' property should have alerted them to protect their rights.  The plaintiffs have "alleged no misrepresentation or concealment of fact *that [they] could not have become aware of through the exercise of reasonable diligence*." *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984) (emphasis added).  The plaintiffs could just as easily have taken such pictures prior to February 2003.  In addition, the experiment the plaintiffs engaged in does not even prove the pictures were taken from the curtilage as a camera with greater zoom could have taken the same picture from farther away.

D.

Finally, even if the plaintiffs could avoid the bars set up by the doctrines of claim and issue preclusion and the statute of limitations with respect to their Fourth Amendment claim, they would still face an insurmountable hurdle because controlling Sixth Circuit precedent precludes relief on the merits of that claim.  In *Widgren v. Maple Grove Township*, 429 F.3d 575 (6th Cir. 2005), the court of appeals held that the Fourth Amendment was not violated by township officials who entered onto the plaintiff's land to view the outside of his house for zoning violations.  A discussion of the facts of that case will show that it has direct application here.

In *Widgren*, the plaintiff owned twenty acres of land in a rural area.  He cleared a lot and built a house.  A thousand-yard driveway led from a public road to the house through a forested area. The driveway was gated where it met the road, and numerous "no trespassing" signs were posted. But the plaintiff failed to obtain a permit before building his house.  A zoning administrator and tax assessor "entered the property a total of three times to confirm the zoning violation, to post a civil infraction on the front door of the house, and to conduct a tax assessment through observation of the

-16-

exterior of the house." *Id.* at 578.  The plaintiff sued the township alleging that the officials' entry

onto his property violated the Fourth Amendment.  The district court dismissed based on the "open

fields" doctrine.  The Sixth Circuit affirmed the dismissal.

On the first entry, the zoning administrator drove up the plaintiff's drive way to within 200

feet of the house.  He did not enter the cleared area.  He subsequently confirmed that no building

permit had been issued for the house and sent a letter to the plaintiff.  The zoning administrator's

"observations here, occurring in the open fields, did not constitute a Fourth Amendment search.  No

reasonable expectation of privacy exists in 'open fields.'"  *Id.* at 579.

On the second occasion, the zoning administrator entered the property to post a civil

infraction notice on the house.  "This intrusion was not a Fourth Amendment search because, under

any definition, no search of any kind occurred.  A search generally implies looking 'over or through

for the purpose of finding something.'"  *Widgren*, 429 F.3d at 580 (quoting *Kyllo v. United States*,

533 U.S. 27, 33 n.1 (2001)).

The third intrusion was by the township's tax assessor, Mr. Beldo:

Upon reading the "No Trespassing" signs, [Mr. Beldo] drove onto the neighboring
property to the south and exited his truck.  While still on the neighboring property,
he observed the Widgren house.  He then walked onto the Widgren property towards
the plainly visible house where no one appeared to be home.  He observed the
house's exterior, measured it by counting the foundation cement blocks, and took a
photograph of the house.  While ascertaining its dimensions, Mr. Beldo entered the
cleared area but came no closer than four to six feet from the house and did not look
into or enter the house.  After conducting his assessment, he promptly left and sent
Mr. Widgren, Sr., a letter informing him of the assessment.
        Pursuant to our above discussion of *Dunn* and the initial visit of Mr. Lenz,
Mr. Beldo's naked-eye observations of the house's exterior from the neighboring
property and from the open fields within the Widgren property for tax assessment
purposes are not Fourth Amendment searches.  A closer question, however, is
whether Mr. Beldo's observation of the house that occurred within the cleared area
constitute a Fourth Amendment search.

-17-

*Id.* at 581. The Court concluded that the tax assessor had, indeed, entered the curtilage of the plaintiff's property. However, the assessor only viewed the outside of the house from the curtilage. Since the outside of the house was visible from neighboring property and the air, the Court held that the plaintiff had no reasonable expectation of privacy in what his house looked like from the outside. The Court then concluded that the unauthorized entry of a tax assessor is less intrusive than one pursuant to a criminal investigation. The court observed that "[s]uch invasions implicate the law of trespass, but not necessarily the Fourth Amendment. *Id.* at 585-86 (citing *Oliver v. United States*, 466 U.S. 170, 183-84 (1984)).

In this case, the ordinance itself prohibited the outside storage of vehicles. By their nature, violations must be observed from outdoors, and the offending vehicles would be visible as in an open field. The conduct of which the plaintiffs complain is the photographing of the plaintiffs' property within the curtilage of his home. Those allegations are not sufficient to establish a violation of the Fourth Amendment, as the court in *Widgren* made clear. Therefore, the defendants are entitled to a dismissal of the amended complaint alleging a Fourth Amendment violation.

### III.

The Court finds that the magistrate judge should have construed the defendants' motion as one for summary judgment under Rule 56, however, there is no impediment to the Court doing so now. The balance of the plaintiff's objections have no merit.

Accordingly, it is **ORDERED** that the report and recommendation of the magistrate judge [dkt # 17] is **ADOPTED IN PART**.

It is furthered **ORDERED** that the plaintiffs' objections to the magistrate judge's report and recommendation are **OVERRULED**.

-18-

It is furthered **ORDERED** that the defendant's "dispositive motion" construed as a motion for summary judgment [dkt # 15] is **GRANTED**.

It is furthered **ORDERED** that the amended complaint is **DISMISSED WITH PREJUDICE**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  November 6, 2006

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon the attorney for the petitioner by electronic means or first class U.S. mail on November 6, 2006.

s/Felicia M. Moses
FELICIA M. MOSES

---

-19-